UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

SAMUEL STEIN,

     Plaintiff,

vs.

RODNEY N. HOWELL, JR., *et al.*,

     Defendants.

Case No. 3:24-cv-166

District Judge Michael J. Newman

---

**ORDER: (1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 23); (2) TERMINATING THIS CASE ON THE DOCKET; (3) CERTIFYING THAT AN APPEAL OF THIS DECISION WOULD NOT BE TAKEN IN GOOD FAITH; AND (4) DENYING PLAINTIFF LEAVE TO APPEAL *IN FORMA PAUPERIS***

---

This civil case arises from conduct that allegedly occurred while Plaintiff Samual Stein ("Stein") was serving a term of post-release control ("PRC") pursuant to a state sentence imposed by the Montgomery County, Ohio Court of Common Pleas.[1] Stein brings this case *pro se*[2] under 42 U.S.C. § 1983 claiming Defendants—Parole Officers Rodney N. Howell, Jr.; Ashley Henschen; Alex Sparkman; Supervising Parole Officer Lori Bonner; Regional Administrator Tina Patrick; and Superintendent Katrina Ransom (collectively "Defendants")—violated his rights under the First Amendment to the United States Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq*. Doc. No. 3. Stein alleges

---

[1] As indicated below, *see infra*, § I(A), Plaintiff had previously served an aggregate nine-year sentence for multiple convictions of conspiracy to commit aggravated murder. *See* Doc. No. 23 at PageID 163-64 (and cases cited therein). PRC "under Ohio law is similar to supervised release under federal law." *In re Stansell*, 828 F.3d 412, 414 (6th Cir. 2016). It is "'a period of supervision by the adult parole authority after a prisoner's release from imprisonment' during which the individual must comply with certain conditions." *Id.* (quoting Ohio Rev. Code § 2967.01(N)).

[2] As with all *pro se* litigants, Stein's documents and allegations are liberally construed in his favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*).

he is entitled to compensatory and punitive damages as well as declaratory and injunctive relief. *Id.* at PageID 39.

This case is before the Court on Defendants' motion for summary judgment.  Doc. No. 23. Stein responded (Doc. No. 25), and Defendants replied (Doc. No. 26).  Thus, the motion is ripe for review.  For the reasons that follow, the Court, having carefully reviewed the parties' arguments and the evidence in this matter, grants Defendants' motion and terminates this case on the docket.

## I.  BACKGROUND

The following factual review is based on the pleadings, exhibits submitted by Defendants,[3] and public state-court records.

### A.  Stein's State Court Conviction[4]

In 2012, Stein was convicted in state court of multiple counts of conspiracy to commit the aggravated murder of Nicole Mausolf, the mother of Stein's son.[5]  *See State v. Stein*, No. 2012 CR 00786 (Montgomery Cnty. C.P. Sept. 14, 2012).  Stein received an aggregate sentence of nine years incarceration, which was upheld on appeal.  *See id.*; *see also State v. Stein*, No. 25432, 2013 WL 3776473, at *1 (Ohio Ct. App. July 12, 2013).

While in prison, the Montgomery County, Ohio Domestic Relations Court found that Stein continued his attempts to have Ms. Mausolf murdered.  Doc. No. 11-1 at PageID 114-23.  As a result, that Court issued a domestic violence civil protection order to protect Ms. Mausolf and her

---

[3] Stein has not submitted any exhibits for the Court to review.

[4] The Court takes judicial notice of these historical facts because Stein's criminal convictions and other state court cases are matters of public court records. *Lyons v. Stovall*, 188 F.3d 327, 333 n.3 (6th Cir. 1999) ("it is well-settled that '[f]ederal courts may take judicial notice of proceedings in other courts of record.'" (citation omitted)).

[5] There appears to be a typo in Defendants' explanation that the date of Stein's indictment was March 14, 2021.  Doc. No. 23 at PageID 163.  According to public records, Stein was indicted and convicted in 2012. *See id*. at PageID 164 (and cases cited therein).

2

son, Ervin Mausolf, from Stein.  *Id.*; *see Mausolf v. Stein*, No. 2020 DV 01854 (Montgomery Cnty. Dom. Rel. Ct. Mar. 18, 2021).

On March 5, 2021, Stein was released from prison and placed on PRC.  Doc. No. 3 at PageID 35.  The Ohio Department of Rehabilitation and Corrections ("ODRC") assigned Parole Officer Howell to supervise Stein while on PRC.  *Id.*

**B.  Access to the Courts**

Stein alleges that on or about March 12, 2021, he told Howell that he intended to file for visitation with his son, Ervin Mausolf.  *Id.*  According to Stein, Howell said he was not allowed to file for visitation with his son or file any *pro se* documents in the courts against Ms. Mausolf, or he would be sent back to prison.  *Id.*  However, "[Howell] berated Stein for filing an objection to a civil protection order that Stein's son's mother had filed against him while still incarcerated[.]"  *Id.*

On September 15, 2023, Stein was released from PRC.  *Id.*  Stein alleges that "his PO" told him again that he was not allowed to make any court filings against Ms. Mausolf.  *Id.*

**C.  Confiscation of Stein's "Athame" and A Letter Opener**

Stein is a "believer and practitioner of Ancestral Ways, a Northern European pagan religion based on the indigenous beliefs and practices of Northern European peoples."  *Id.* at PageID 36. According to Stein, an essential part of this religion is the use of a ritual knife, known as an "Athame," during religious ceremonies.  *Id.*

On May 25, 2022, Stein alleges that Parole Officers Howell, Henschen, and Sparkman entered his residence and seized two knives (his athame and a small letter opener) that were located on a table in his home.  *Id.*; *see* Doc. 11-1 at PageID 97.  The confiscated knives are pictured below:

3



Doc. No. 11-1 at PageID 97.

Howell allegedly told Stein that he was confiscating both knives because he "consider[ed]

them to be weapons."  Doc. No. 3 at PageID 36.  Howell also allegedly stated:

> [I]t looks like a weapon to me, not a religious item, because it's out in the open like
> that, while other knives are in the kitchen and toolboxes and vehicles.  I don't have
> a problem with you having knives like this, I'm not searching your house, but
> because this is out in the open it looks like a weapon to me.

*Id.* at PageID 36-37.  Stein contends that he immediately contacted Howell's supervisor,

Supervising Parole Officer Bonner, but she never responded.  *Id.* at PageID 37.  On May 27, 2022,

Stein again contacted Howell, who verified that he would not return the athame until Stein was no

longer on PRC.  *Id.*

On June 8, 2022, Stein filed an ODRC grievance against Howell regarding the confiscation

of his athame.  In its entirety, the grievance reads:

4

> On or about 25 May, 2022, my P.O. Rodney Howell confiscated my athame, a religious item (ceremonial knife) and said that he would not return it because he said it looked like a weapon. It's a knife, and a ritual knife at that, used in the practice of my religion. The is a violation of my First Amendment Rights to Practice my faith.

Doc. No. 11-1 at PageID 98. On July 18, 2022, Bonner responded to Stein's grievance:

> This is a weapon and not a violation of your rights. You are on PRC for conspiracy to commit Agg[ravated] Murder. You will get them back when off supervision for officer safety. Was not mentioned until week later.

*Id.*

Stein filed appeals with the ODRC on July 15, 2022 and July 26, 2022. *Id.* at PageID 100-10. Regional Administrator Patrick responded to the appeals on August 17, 2022, concurring with the unit supervisor's response and confirming that the athame would be returned to him upon completion of his supervision. Doc. No. 3 at PageID 38; Doc. No. 11-1 at PageID 102, 107.

On August 30, 2022, Stein filed an additional appeal with Superintendent Ransom, who informed Stein that the confiscation of his knives was appropriate due to officer safety concerns and the knives would be returned to him upon the completion of his PRC supervision. Doc. No. 3 at PageID 38; Doc. No. 11-1 at PageID 107-13.

Stein alleges that as a result of these actions, Defendants violated his sincerely held religious beliefs by preventing him from practicing his religion from May 25, 2022 until September 15, 2023. Doc. No. 3 at PageID 38. Further, he claims that Defendants' actions prevented him from "observing the holy days of winter finding 2022, Yule 2022, Ostara 2023, as well as his weekly rune divination and bi-monthly rune divinations on the full and new moon of each month." *Id.*

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that no genuine issue of material fact is present, and the movant is entitled to

5

judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The burden is on the moving party to conclusively show no genuine issue of material fact exists.  *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).  The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations … admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A) and (B).

A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party—in this instance, in the light most favorable to Stein.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, "[t]he non-moving party … may not rest upon [his or her] mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial."  *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citations omitted).  "[T]here is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'"  *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992) (citations omitted).  Instead, "the free-ranging search for supporting facts is a task for which attorneys in the case are equipped and for which courts generally are not."  *Id.* at 406.

### III.  ANALYSIS

For Stein to succeed on his § 1983 claims, he must establish a person acting under color of state law violated his rights secured by the Constitution or laws of the United States.  *Littler v. Ohio Ass'n of Pub. Sch. Emps.*, 88 F.4th 1176, 1180 (6th Cir. 2023).

### A.     Mootness

In his complaint, Stein seeks declaratory relief; an injunction "prohibiting APA[6] officers, supervisors and administration officials from preventing [his] access to the courts"; and an injunction "preventing ODRC/APA officials from retaliating against [him] for accessing the courts." Doc. No. 3 at PageID 39 (footnote added).  Defendants argue that since Stein is no longer subject to PRC and his two knives were returned to him on September 15, 2023, *see id.* at PageID 38, his requests for injunctive relief are moot.  Doc. No. 23 at PageID 168-69.

"The case or controversy requirement in Article III of the Constitution determines the power of the federal courts to entertain a suit." *Appalachian Reg'l Healthcare, Inc. v. Coventry Health & Life Ins. Co.*, 714 F.3d 424, 429 (6th Cir. 2013) (quoting *ACLU v. Nat'l Sec. Agency*, 493 F.3d 644, 688 (6th Cir. 2007) (Gibbons J., concurring)).  The Court lacks the power to adjudicate disputes that are moot, and "[t]he mootness inquiry must be made at every stage of a case." *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc).  "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "The test for mootness is 'whether the relief sought would, if granted, make a difference to the legal interests of the parties.'" *McPherson*, 119 F.3d at 458 (alteration omitted) (quoting *In re Crane v. Indiana High Sch. Athletic Ass'n*, 975 F.2d 1315, 1318 (7th Cir. 1992)).

It is undisputed that Stein has completed his term of post-incarceration supervision and is no longer subject to PRC.  *See* Doc. No. 3 at PageID 35; Doc. No. 23 at PageID 169.  Since he is no longer on PRC, and since his two knives were returned to him, Stein's requests for injunctive

---

[6] "APA" refers to the ODRC's Adult Parole Authority, which "is responsible for the release and supervision of adult felony offenders returning to local communities from prison[.]"  https://drc.ohio.gov/systems-and-services/1-parole/parole.

7

and declaratory relief are moot.  *See Holson v. Good,* 579 Fed. App'x 363, 366 (6th Cir.2014) (holding that a plaintiff's § 1983 claims against a parole officer seeking injunctive relief based on conditions at a halfway house were rendered moot when the plaintiff was moved out of the halfway house); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (finding plaintiff's request for declaratory and injunctive relief moot as he was no longer confined to the institution where the alleged wrongdoing occurred); *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (request for declaratory and injunctive relief became moot once plaintiff was released from custody). Defendants are thus entitled to summary judgment with regard to Stein's requests for declaratory and injunctive relief.

## B. Eleventh Amendment Immunity

Stein next brings claims against Defendants in both their individual and official capacities. Doc. No. 3 at PageID 34.  Defendants argue the Eleventh Amendment bars Stein's official capacity claims.  Doc. No. 23 at PageID 178.

The Eleventh Amendment expressly provides that federal courts have no jurisdiction over "any suit in law or equity" filed "against one of the United States." U.S. Const. amend. XI.  This immunity—known as "sovereign immunity"—extends to state officials sued in their official capacities. *Maben v. Thelen*, 887 F.3d 252, 270 (6th Cir. 2018).  The United States Supreme Court has recognized a narrow exception to Eleventh Amendment sovereign immunity for plaintiffs seeking only non-monetary relief from government officials in their official capacities. *Ex Parte Young*, 209 U.S. 123, 155-56 (1908).  This "*Ex Parte Young*" exception permits a plaintiff suing a defendant in his or her official capacity to "seek prospective relief to end a continuing violation of federal law." *Doe v. Wright State Univ.*, No. 3:16-cv-469, 2017 WL 3671240, at \*4 (S.D. Ohio Aug. 24, 2017) (citing *Diaz v. Michigan Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2014)).

In this case, the *Ex Parte Young* exception does not apply.  Stein's remaining requests seek

monetary relief. *See* Doc. No. 3 at PageID 39; *see also supra* § III(a). Specifically, Stein's complaint seeks compensatory damages and punitive damages. *Id.* Stein's claims against Defendants in their official capacities are therefore barred by the Eleventh Amendment. *Accord Lee v. W. Rsrv. Psychiatric Habilitation Ctr.*, 747 F.2d 1062, 1065-67 (6th Cir. 1984). Thus, the only remaining claims are claims for monetary damages against Defendants in their individual capacities.

## C. Access to Courts

Stein further contends that Howell's conduct chilled him from accessing the courts to file for visitation with his son. Doc. No. 3 at PageID 35. Howell denies he told Stein he could not file *pro se* documents in any court regarding his son or Ms. Mausolf. Doc. No. 11 at PageID 90; Doc. No. 23 at PageID 164-65.

Prison inmates and parolees have a constitutional right to access the courts under the First Amendment. *Whiteside v. Parrish*, 387 Fed. App'x 608, 613 (6th Cir. 2010); *see Jenkins v. Young*, No. 2:23-CV-13188, 2024 WL 3297137, at *4 (E.D. Mich. July 3, 2024). This constitutional right, however, does not extend to every legal action or claim a prisoner or parolee wishes to pursue. *Lewis v. Casey*, 518 U.S. 343, 355 (1996). Rather, a prisoner's or parolee's "right of access to the courts is limited to direct criminal appeals, *habeas corpus* applications, and civil rights claims challenging the conditions of confinement." *Courtemanche v. Gregels*, 79 Fed. App'x 115, 117 (6th Cir. 2003) (citing *Lewis*, 518 U.S. at 355). Additionally, an inmate can only seek relief when officials impede access to the courts in a way that causes an actual injury and prejudices the inmate's litigation. *Kensu*, 87 F.3d at 175; *Lewis*, 518 U.S. at 349.

Accepting Stein's assertion as true—*i.e.*, that Howell told him he could not file for visitation with his son or file any documents against Ms. Mausolf—the alleged inability to file for visitation with his son or inability to file any documents against Ms. Mausolf did not impact Stein's

9

right to file or pursue a non-frivolous claim on direct criminal appeal, in a *habeas corpus* application, or in a civil rights action challenging the conditions of his confinement. *See Courtemanche*, 79 Fed. App'x at 117. Additionally, his purely conclusory assertion—that he has faced relationship difficulties with his son due to Howell's conduct—is insufficient to create a genuine dispute over Howell's conduct or an actual injury he may have caused. *See Fields v. County of Lapeer*, No. 99-2191, 2000 WL 1720727, at \*4–5 (6th Cir. Nov. 8, 2000) ("A speculative injury does not vest a plaintiff with standing [to pursue an access-to-the-courts claim]"); *McCurtis v. Wood*, 76 Fed. App'x 632, 634 (6th Cir. 2003); *Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319, 1324 (6th Cir. 1983) ("[W]hen a motion for summary judgment is made and supported, the opposing party may not rest on its pleadings, but must present sufficient evidence supporting its claims to demonstrate that there is a genuine issue of material fact"). Thus, Stein's access-to-the-courts claim is without merit and Defendants are entitled to summary judgment on this claim.

### D. Athame Claims

#### 1. First Amendment Claim

Stein further alleges that Defendants violated his First Amendment right to the free exercise of religion by confiscating his athame while he was on PRC supervision. *See* Doc. No. 3 at PageID 36-38.

The First Amendment guarantees that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const., Amend. 1. Prisoners and parolees "maintain the First Amendment right to the free exercise of their religion." *Hayes v. Tennessee*, 424 Fed. App'x. 546, 549 (6th Cir. 2011). However, "[a] convict out on supervised release enjoys weaker First Amendment rights than the ordinary citizen." *United States v. Shultz*, 733 F.3d 616, 624 (6th Cir. 2013); *see Pennsylvania Bd. of Prob. & Parole v. Scott*, 524

U.S. 357, 365 (1998) ("Parole is a variation on imprisonment of convicted criminals in which the State accords a limited degree of freedom in return for the parolee's assurance that he will comply with the often strict terms and conditions of his release").  Thus, a parolee's rights under the First Amendment's Free Exercise Clause may be subject to reasonable restrictions.  *See Weinberger v. Grimes*, No. 07-6461, 2009 WL 331632, at *4 (6th Cir. Feb. 10, 2009); s*ee also United States v. Schave*, 186 F.3d 839, 843 (7th Cir. 1999) (holding that "a court will not strike down conditions of release, even if they implicate fundamental rights, if such conditions are reasonably related to the ends of rehabilitation and protection of the public").

> **a. Supervising Parole Officer Bonner, Reginal Administrator Patrick, and Superintendent Ransom**

When, as here, the § 1983 claims are brought against public officials in their individual capacities, a plaintiff must establish the "personal involvement" of each defendant in the alleged violation.  *Bruner v. Dunaway*, 684 F.2d 422, 425 (6th Cir. 1982).  Basic *respondeat superior* principles do not establish personal involvement; rather, a plaintiff must demonstrate each defendant's active participation in the alleged unconstitutional behavior.  *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).

Stein's claims against Supervising Parole Officer Bonner, Reginal Administrator Patrick, and Superintendent Ransom are based upon their positions of supervisory authority and their involvement in Stein's grievance process.  *See* Doc. No. 3 at PageID 36-38.  Mere knowledge of a grievance does not establish the type of "direct participation" required to impose liability on these Defendants.  *Leary v. Daeschner,* 349 F.3d 888, 903 (6th Cir. 2003) ("[S]imple awareness of employees' misconduct does not lead to supervisor liability [under § 1983]").  Nor do their responses to Stein's grievances amount to encouragement of, or participation in, the alleged

11

underlying violation(s). *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (finding defendants not liable where they "knew of the alleged violations . . . but failed to act when the situation was in their control"); *Combs v. Sumner Cty. Jail*, No. 3:18-cv-786, 2018 WL 6181346, at *4 (M.D. Tenn. Nov. 27, 2018) ("[M]ishandling of the plaintiff's grievances—either by denying them or failing to act in response to them—is not the type of 'direct participation' that gives rise to liability under Section 1983"). Stein's allegations—that Defendants were aware of, and responded to, his grievances—fall short of establishing "personal involvement" in the alleged violation(s), and summary judgment should be granted regarding this claim on behalf of Supervising Parole Officer Bonner, Reginal Administrator Patrick, and Superintendent Ransom.

### b. Parole Officers Howell, Sparkman, and Henschen

There is limited case law regarding the elements a parolee must show to establish a violation of his or her rights under the Free Exercise Clause. Borrowing from closely analogous prisoner claims, under § 1983, a prisoner alleging that prison officials acted unreasonably and violated his or her free exercise rights must prove that (1) those religious beliefs are "sincerely held" and (2) the prison's action "substantially burdened his [or her] sincerely held religious beliefs." *Hayes*, 424 Fed. App'x at 555. The action, however, "is valid if it is 'reasonably related to legitimate penological interests.'" *Colvin v. Caruso*, 605 F.3d 282, 296 (6th Cir. 2010) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Assuming, in Stein's favor, that his belief in Ancestral Ways is sincerely held and the removal of the athame substantially burdened his religious beliefs, his claim fails because Defendants' actions were reasonably related to a penological interest. *Accord Spies v. Voinovich*, 173 F.3d 398, 403-05 (6th Cir. 1999). Stein acknowledges that when these Defendants seized the athame and the letter opener, Howell told him he was confiscating the knives because "[he] considered them to be weapons." Doc. No. 3 at PageID 36-37. Defendants agree that Parole

12

Officers Howell, Sparkman, and Henschen removed the knives from Stein's home for officer safety due to his conspiracy to convict aggravated murder.  Doc. No. 23 at PageID 175.  Officer safety is a penological interest.  *Cf. Michenfelder v. Sumner*, 860 F.2d 328, 333 (9th Cir. 1988) (finding legitimate penological justification for conducting searches in public hallways where the only alternative would have presented a risk to officer safety).  Stein has not provided any evidence upon which a reasonable jury could conclude that the removal of the knives was due to any other interest besides officer safety.  *See Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339-40 (6th Cir. 1993) ("[A] district court should, after viewing the evidence in a light most favorable to the nonmoving party, determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law'" (quoting *Anderson*, 477 U.S. at 251-52)).  Therefore, Parole Officers Howell, Henschen, and Sparkman are entitled to summary judgment on this issue.

### 2.  RLUIPA Claim

Stein further claims Defendants are liable for confiscating his athame in violation of RLUIPA.  Doc. No. 36-39.

RLUIPA "prohibits a state or local government from taking any action that substantially burdens the religious exercise of an institutionalized person unless the government demonstrates that the action constitutes the least restrictive means of furthering a compelling government interest."  *Holt v. Hobbs*, 574 U.S. 352, 356 (2015).  The statute protects the religious liberties of individuals "residing in or confined to an institution, as defined in section 1997 of this title." 42 U.S.C. § 2000cc-1(a).  An institution includes "any facility or institution" that is "a jail, prison, or other correctional facility [or] a pretrial detention facility."  42 U.S.C. § 1997(1).  The few courts to address this issue have found that restriction or supervision of an individual who is not located in a physical facility cannot sustain a RLUIPA claim.  *See Mueller v. Bennett*, No. 3:18-cv-528,

2020 WL 1430430, at *7 (E.D. Va. Mar. 23, 2020) (finding that placement on probation was not a "facility or institution" under RLUIPA); *Belton v. Betzhold*, No. 12-cv-53, 2012 WL 6094461, at *1 (E.D. Wis. Dec. 7, 2012) ("RLUIPA does not apply to parolees").

Stein has completed his sentence, including his term of PRC. Because he is not confined to and does not reside in an institution—and did not at the time here in question—RLUIPA does not provide him a remedy. *See Shash v. City of Pueblo*, 770 F. Supp. 3d 1279, 1298 (D. Colo. 2025). Therefore, Defendants are also entitled to summary judgment on this issue.

### E. Qualified Immunity

Defendants contend that qualified immunity shields them from Stein's § 1983 claims for monetary liability. *See* Doc. No. 23 at PageID 179-80.

Individual state actors performing discretionary functions are entitled to qualified immunity with regard to § 1983 claims unless the allegations, "when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is "clearly established" when "existing precedent … placed the statutory or constitutional question beyond debate." *City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 611 (2015) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Here, because Stein's § 1983 claims fail on the merits, Defendants are also entitled to qualified immunity regarding each of those claims. *See Aldini*, 609 F.3d at 863.

### IV. CONCLUSION

For the reasons stated herein, Defendants' motion for summary judgment is **GRANTED**. Doc. No. 23. This case is **TERMINATED** on the docket. The Court **CERTIFIES** that an appeal of this decision would not be taken in good faith and, accordingly, **DENIES** Stein leave to appeal

14

*in forma pauperis*.

**IT IS SO ORDERED.**

  February 26, 2026                            s/*Michael J. Newman*             
                                                     Hon. Michael J. Newman
                                                     United States District Judge